UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CHARLES KING, | ) No. ED CV 12-921-PLA |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on June 15, 2012, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on July 8, 2012, and July 13, 2012.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on January 31, 2013, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## **BACKGROUND**

Plaintiff was born on August 2, 1985. [Administrative Record ("AR") at 70.] He has a twelfth grade-education [AR at 29, 143] and past relevant work experience as a hand packager and an air conditioning installation helper. [AR at 139-40, 185.]

Plaintiff filed his application for Disability Insurance Benefits on October 1, 2007, and protectively filed his application for Supplemental Security Income payments on October 12, 2007, alleging that he has been unable to work since June 2, 2006, due to bipolar disorder, depression, suicidal tendencies, paranoia, and hearing voices. [AR at 70-71, 120-27, 138-44, 168-74.] After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 72-86.] A hearing was held on February 24, 2010, at which time plaintiff appeared with counsel and testified on his own behalf. A third party witness, a psychological expert, and a vocational expert also testified. [AR at 23-64.] On April 6, 2010, the ALJ determined that plaintiff was not disabled. [AR at 10-18.] On April 11, 2012, the Appeals Council denied plaintiff's request for review. [AR at 1-3, 6.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform

past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

The ALJ must conduct the five-step inquiry without attempting to determine the impact of any substance addiction. 20 C.F.R. §§ 404.1535(a), 416.935(a). If the ALJ finds that the claimant is not disabled under the five-step inquiry, the claimant is not entitled to benefits, and there is no need to proceed with further analysis. Id. However, if the ALJ finds the claimant disabled and there is evidence of substance addiction, the ALJ must proceed under the sequential evaluation set forth in §§ 404.1535 and 416.935 to determine if the claimant would still be disabled absent the substance addiction. Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001). If a claimant is found disabled with the effects of substance addiction, it is the claimant's burden to prove substance addiction is not a contributing factor material to his disability. Parra v. Astrue, 481 F.3d 742, 748 (9th Cir. 2007). If the ALJ determines that the substance addiction is a contributing factor material to the claimant's disability, the claimant "shall not be considered to be disabled." 42 U.S.C. § 423(d)(2)(C); see 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since his alleged disability onset date, June 2, 2006. [AR at 13.][1] At step two, the ALJ concluded that plaintiff has the severe impairments of bipolar disorder, not otherwise specified, and polysubstance abuse. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further

---

[1] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2007. [AR at 12.]

4

found that based on all of plaintiff's impairments, including the substance abuse disorders, plaintiff retains the residual functional capacity ("RFC")[2] to perform a full range of work at all exertional levels, but with the following nonexertional limitations: no contact with the public; no more than superficial business-related contact with coworkers and supervisors; needs supervision to be reminded to stay on task every couple of hours; simple repetitive tasks; no deviation throughout the workday; no hypervigilance; no fast-paced work like a rapid assembly line; no work around dangerous machinery; not responsible for the safety of others; no operation of vehicles; and plaintiff would miss more than two days of work per month. At step four, the ALJ concluded that, based on this RFC, plaintiff is unable to perform his past relevant work. [AR at 14.] At step five, the ALJ found, relying on the Medical-Vocational Guidelines, that considering plaintiff's age, education, work experience, and RFC based on all of his impairments, there are no jobs that exist in significant numbers in the national economy that plaintiff can perform. [AR at 15.] However, the ALJ also found that if plaintiff stopped his substance abuse, his remaining impairments would not meet or equal any of the impairments in the Listing, but he would retain the same RFC as when his substance abuse is considered -- with the exception that he would not miss more than two days of work per month. [AR at 16.] The ALJ further found that if plaintiff stopped the substance abuse, he <u>would</u> be able to perform his past relevant work as a hand packager. Under 20 C.F.R. §§ 404.1535 and 416.935, the ALJ concluded that because plaintiff would not be disabled if he stopped the substance abuse, his substance abuse disorder is a contributing factor material to the determination of disability, and therefore he has not been disabled from June 2, 2006, to April 6, 2010, the date of the decision. [AR at 18.]

/
/
/
/

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. <u>See</u> <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ improperly: (1) failed to consider plaintiff's substance abuse in determining his ability to perform his past relevant work; (2) rejected the lay testimony of plaintiff's father; (3) discounted plaintiff's credibility; and (4) rejected the psychological expert's testimony that plaintiff cannot carry out detailed instructions. [Joint Stipulation ("JS") at 5.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A. PLAINTIFF'S RFC AND PAST RELEVANT WORK**

Plaintiff contends that the ALJ improperly disregarded plaintiff's substance abuse when posing a hypothetical question to the vocational expert ("VE"). Plaintiff argues that the ALJ's reliance on the VE's resulting testimony to find that plaintiff can perform his past relevant work as a hand packager therefore is not supported by substantial evidence. [JS at 5-7.]

Plaintiff is incorrect. As stated supra, a claimant is not entitled to benefits if substance abuse is a contributing factor material to his disability. Here, the ALJ correctly utilized the procedure set forth in 20 C.F.R. §§ 404.1535 and 416.935. He first found, considering the impact of plaintiff's substance abuse along with the impact of his bipolar disorder, that plaintiff is disabled. However, the ALJ then found that absent the substance abuse, plaintiff's limitations would not preclude him from performing his past relevant work. The ALJ therefore concluded that plaintiff's substance abuse is a contributing factor material to his disability, and found him not disabled. Under 20 C.F.R. §§ 404.1535(b)(2)(i) and 416.935(b)(2)(i), the ALJ properly considered plaintiff's limitations, not including those from the substance abuse, to determine whether plaintiff can perform his past relevant work. Remand is not warranted on this issue.

**B. LAY WITNESS TESTIMONY**

Plaintiff argues that the ALJ erred by failing to assign any weight to plaintiff's father's opinion. [JS at 8-18.]

6

An ALJ may consider lay witness testimony to determine the severity of a claimant's impairments and how the impairments affect his ability to work. Stout v. Comm'r of Social Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); 20 C.F.R. §§ 404.1513(d)(4), (e), 416.913(d)(4), (e). Lay witnesses include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. See Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987). Such testimony "is of particular value" because those who see a claimant every day can often tell whether he is suffering or merely malingering. See Smolen, 80 F.3d at 1289 (citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1999)). While an ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis" (Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012)), he may discount the testimony of lay witnesses only for "reasons that are germane to each witness." Dodrill, 12 F.3d at 919; Regennitter v. Comm'r of Social Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999).

At the hearing before the ALJ, plaintiff's father testified that plaintiff "doesn't pay attention to what he's doing a lot of times," and that he must "be constantly supervised." [AR at 55-56.] Plaintiff's father stated that he has no confidence that plaintiff could do something relatively simple without supervision, and that, for example, if plaintiff were to "go[] outside to clean up," his father would keep an eye on him to "make sure he's going to concentrate on what he was doing instead of disappearing and doing things he's not supposed to be doing." [AR at 56-57.] Plaintiff's father reported that plaintiff sometimes starts a chore and then "walks away and has to be reminded to finish." [AR at 58.] He also reported that as a result of plaintiff's inability to concentrate, "he gets dangerous with simple tasks," citing the following examples: "if he's cooking his meal, [someone has to] make sure he's going to pay attention to his meal instead of catch the pot on fire again"; "he'll start [raking the leaves] and as he's doing it, he'll ... get frustrated with raking leaves ... [a]nd next thing we know, he's got a razor blade in his hand stripping wire because he wants to ... make money[,] ... and then he winds up cutting himself and getting stitches"; and he "doesn't usually"

use power tools "because he wants to hurry, he wants to rush, and it gets unsafe." [AR at 55-57.] Plaintiff's father testified that a few years earlier, at a time when plaintiff was not using drugs, plaintiff's brother "put [plaintiff] to work [at McDonald's] ... for a couple of weeks and then brought him home and said, dad, I can't have him at work; he's too dangerous." [AR at 59-60.] When the ALJ asked plaintiff's father whether plaintiff "[h]as gotten better after being clean and sober," plaintiff's father answered, "Oh, yeah." [AR at 59.] He nevertheless testified that he did not believe plaintiff could sustain even a part-time job at the time of the hearing -- even though plaintiff had been clean and sober for about a year by that time -- because "he doesn't pay attention to what he's doing, he gets unsafe, and he's going to hurt himself." [AR at 60.]

In his decision, the ALJ mentioned plaintiff's father's testimony, stating that he "testified [plaintiff] needs constant supervision when performing activities of daily living," but did not indicate what weight he assigned to plaintiff's father's testimony. [See AR at 17-18.] An ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis," but he cannot disregard lay testimony without comment. Molina, 674 F.3d at 1114-15 (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). Here, plaintiff's father sees plaintiff on a daily basis and has known him for his entire life, and thus his testimony "constitute[d] qualified evidence" that the ALJ was obligated to consider. See Sprague, 812 F.2d at 1231-32. The ALJ's failure to state why he rejected plaintiff's father's testimony was error, even if the ALJ's reasons for doing so may have been the same reasons he rejected plaintiff's testimony. Compare Valentine v. Comm'r of Social Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (ALJ gave an adequate explanation for rejecting the claimant's wife's testimony, which was similar to the claimant's testimony, where she stated that she was rejecting the wife's testimony for "the same reasons" she discounted the claimant's testimony), with Molina, 674 F.3d at 1114-15 (ALJ committed error by disregarding the lay witness testimony without comment; ALJ's adequate reasons for rejecting the plaintiff's credibility were insufficient to reject the lay witness testimony where the ALJ did not state that he was rejecting that testimony for the same reasons).

Moreover, the ALJ's failure in this instance does not constitute harmless error because the testimony of plaintiff's father corroborates plaintiff's testimony, which the ALJ rejected without

providing legitimate reasons (see infra). See Booz v. Sec'y of Health and Human Serv., 734 F.2d 1378, 1381 (9th Cir. 1984) (holding that the test for determining whether an error is harmless is "whether there is a reasonable possibility that [the new evidence] would have changed the outcome of the present case"). Indeed, plaintiff's father's testimony lends some support to plaintiff's testimony regarding his inability to work. Moreover, plaintiff's father's testimony that plaintiff must "be constantly supervised" is more restrictive than the limitation in plaintiff's RFC as determined by the ALJ that plaintiff "needs supervision to be reminded to stay on task every couple of hours." Thus, the Court cannot confidently conclude that no reasonable ALJ, if crediting plaintiff's father's lay witness testimony, would have reached a different disability determination. See Ellison v. Astrue, 2008 WL 4425764, at *5 (C.D. Cal. Sept. 29, 2008) ("'[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the [plaintiff], a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.") (citing Stout, 454 F.3d at 1056). Accordingly, remand is warranted on this issue.

**C.  PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY**

Plaintiff contends that the ALJ failed to properly evaluate his subjective symptom testimony. [JS at 21-29.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may only reject the claimant's testimony about the severity of his symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons for doing so. See Dodrill, 12 F.3d at 918 (9th Cir. 1999); see also Lingenfelter, 504 F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The factors to be considered in weighing

a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

At the administrative hearing, plaintiff testified that he has daily problems with concentration, that he is very easily distracted, and that his "mind [is] like a TV set that's being changed constantly." [AR at 53-54.] He also has trouble sleeping because his mind is active at night. [AR at 54.] Plaintiff further testified that he is "always thinking that somebody's after [him]"; that he looks over his shoulder constantly, even at home; and that he thinks "all the time" that "something might happen" to him or that he "might die." [AR at 47-48.] Plaintiff stated that he has visual hallucinations where he sees things "like clowns"; hears voices calling his name; and is "always running out the door, saying, hey, who's calling me?" [AR at 45-46.] Plaintiff reported that he does not "go out" because he does not "get along with other people" and "always think[s] that ... they're talking trash or something." [AR at 35.] Plaintiff also reported that he has "a very short fuse" and can "just blow up at [someone he is talking to] for no reason." [AR at 50.] Plaintiff testified that he "get[s] depressed quite often" and has tried to harm himself more than 20 times, but also testified that he has not "cut" himself since he started living with his parents about two years prior to the hearing. [AR at 51.]

At step one of the two-step credibility analysis, the ALJ found that if plaintiff were to stop the substance abuse, his "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." [AR at 17.] The ALJ nevertheless concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC findings for plaintiff]." [Id.] Thus,

at step two, as the record contains no evidence of malingering by plaintiff,[3] the ALJ was required to offer "specific, clear and convincing reasons" for rejecting his subjective symptom testimony. See Lingenfelter, 504 F.3d at 1036. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834); see also Dodrill, 12 F.3d at 918.

The ALJ's only explicit reason for rejecting plaintiff's credibility was that "[t]he objective medical evidence does not support the full extent of the alleged severity of symptoms or more restrictive functional limitations." [AR at 18.] This was not a legally adequate reason to reject plaintiff's subjective symptom testimony. Once a claimant has produced objective medical evidence of an impairment or impairments, he "need not produce objective medical evidence of the [subjective symptom] itself, or the severity thereof." Smolen, 80 F.3d at 1282; see Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) ("once an impairment is medically established, the ALJ cannot require medical support to prove the severity of the [subjective symptom]"). The Commissioner considers symptoms such as nervousness to be subjective symptoms, and analyzes testimony concerning such symptoms using the same two-step analysis as that used for testimony concerning physical pain. See 20 C.F.R. §§ 404.1529(b); 416.929(b) ("Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."). The case law holding that "[a] claimant need not produce objective medical evidence of the [subjective symptom] itself, or the severity thereof," reflects the rationale that "pain testimony may establish greater limitations than can medical evidence alone." Smolen, 80 F.3d at 1282 (internal citations omitted); Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Social Security Ruling[4] 96-7p). The Ninth Circuit has noted that

---

[3] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

[4] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they
(continued...)

"the nature of pain and other such symptoms" is "highly subjective and idiosyncratic" such that "[t]he amount of pain caused by a given physical impairment," for example, "can vary greatly from individual to individual." Smolen, 80 F.3d at 1282 (internal citations omitted). While an ALJ may consider whether a lack of objective medical evidence supports the degree of limitation, this "cannot form the sole basis for discounting pain testimony." Burch, 400 F.3d at 681. Here, although the ALJ did not give any other explicit reasons to reject plaintiff's credibility, the Court addresses below another reason the ALJ *may* have given to reject plaintiff's credibility. Thus, even if the ALJ's characterization of the medical evidence were supported by substantial evidence, he can only rely upon this rationale to discount plaintiff's pain testimony if his other reason is proper. However, it is not.

The other reason the ALJ may have relied upon to reject plaintiff's credibility was the testimony of the psychological expert, Dr. Kania,[5] that plaintiff received "fairly regular treatment in 2009, which has led to a stable psychiatric condition." [See AR at 17.] Specifically, the ALJ compared plaintiff's psychiatric symptoms as described in a February 25, 2009, letter from a mental health clinic where plaintiff received services from October, 2007 to as late as that date [AR at 276-77], with plaintiff's treatment records from his "reported period of sobriety" (which the ALJ determined was the year prior to his decision),[6] and found that plaintiff "responded well to treatment" and reached a "stable psychiatric condition" during his period of sobriety. [See AR at 17.]

However, plaintiff's treatment records from the year prior to the ALJ's April 6, 2010, decision do not clearly and convincingly demonstrate that plaintiff reached a "stable psychiatric condition" during the year he was sober. For example, an August 11, 2009, treating evaluation reflects that

---

[4](...continued)
"constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[5] Dr. Kania's first name is not reflected in the record.

[6] The ALJ noted earlier in his decision that "Dr. Kania relied on [plaintiff's] testimony that he has abstained from substance use for the last year." [AR at 16.]

1  plaintiff was at that time experiencing depression, anxiety, visual hallucinations, and poor impulse
2  control, as well as having intermittent suicidal ideations. [AR at 293-94.] Similarly, an August 31,
3  2009, adult clinical assessment stated that plaintiff was experiencing "paranoid thoughts" during
4  the day and in the evening; reported that he "[l]ast felt suicidal 3 days [prior]," which "lasted two
5  days"; opined that plaintiff's "[d]epression [and] [p]aranoia get in the way of obtaining work"; and
6  assigned him a Global Assessment of Functioning[7] score of 48.[8] [AR at 305-10.] A September
7  2, 2009, mental status examination found that plaintiff was depressed, paranoid, angry and/or
8  irritable, experiencing auditory hallucinations, reporting recent suicidal ideations, and displaying
9  poor insight and judgment. [AR at 303-04.] Finally, an October 6, 2009, treating note reported
10 that plaintiff was calm on that date, but had "had [a] bad episode of violence [illegible] 2 w[ee]ks
11 [prior] [and] went to CUIC[9] (by police)." [AR at 300 (footnote added).] Many of the symptoms and
12 limitations in these evaluations and treating notes mirror the psychiatric symptoms found in the
13 February 25, 2009, letter from the Victor Valley Behavioral Health Clinic (VVBHC), which the ALJ
14 relied on to contrast plaintiff's condition prior to April, 2009, with his condition for the one year
15 following April, 2009. The February 25, 2009, letter cited the following behaviors that the VVBHC
16 staff had observed in plaintiff from October, 2007, to the date of the letter: hopelessness and
17 helplessness; suicidal ideations; anger outbursts resulting in violence; isolation; paranoia;
18 nightmares; irritability; auditory hallucinations; a low threshold for stress; and impulsivity. [AR at
19 276-77.] Given that plaintiff's medical records from the period of his reported sobriety contain
20 psychiatric symptoms that mirror those in the medical records from the time before he was sober,

---

[7] A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th ed. 2000).

[8] A GAF score in the range of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., unable to keep a job). DSM-IV, at 32.

[9] The record does not reflect what "CUIC" stands for.

to the extent the ALJ discounted plaintiff's credibility because he found that plaintiff had a "stable psychiatric condition" during his period of sobriety, that reason was not clear and convincing.

The ALJ failed to give any clear and convincing reasons to reject plaintiff's credibility. Remand is warranted on this issue.

### D.   MEDICAL EXPERT OPINION EVIDENCE AND THE RFC DETERMINATION

Plaintiff argues that the ALJ erred by failing to incorporate into plaintiff's RFC determination the psychological expert's opinion that plaintiff cannot perform work that "require[s] detailed instructions." [JS at 31-36.]

In determining a claimant's disability status, an ALJ has the responsibility to determine the claimant's RFC after considering "all of the relevant medical and other evidence" in the record. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c). "Thus, an RFC that fails to take into account a claimant's limitations is defective." Valentine, 574 F.3d at 690. Similarly, "[t]he hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out *all* the limitations and restrictions of the particular claimant.'" Id. (citing Embrey, 849 F.2d at 422 (emphasis in original)). See also Nguyen, 100 F.3d at 1466 n.3 ("Because the hypothetical was incomplete, it does not constitute competent evidence to support a finding that claimant could do jobs set forth by the vocational expert.").

At the administrative hearing, Dr. Kania testified that without considering plaintiff's substance abuse, plaintiff would still have various work limitations, including the limitation that he cannot perform "[any]thing that require[s] detailed instructions." [AR at 38-39.] Thereafter, in questioning the vocational expert, the ALJ asked the VE to assume a hypothetical person of plaintiff's age, education, and past relevant work experience, as well as with a limitation "to simple, repetitive tasks" (among other limitations). The ALJ's hypothetical question did not include a limitation excluding "detailed instructions." [AR at 62.] The VE testified that such a person could perform plaintiff's past job as a hand packager. [AR at 62-63.]

In his decision, the ALJ assigned "great weight to Dr. Kania's assessment of [plaintiff's] functional limitations without substance abuse." [AR at 17.] At the same time, the ALJ's RFC

determination for plaintiff reflected that if plaintiff stopped the substance abuse, he would have various nonexertional limitations that Dr. Kania opined he has -- as well as a limitation to "simple, repetitive tasks" -- but it did not specifically reflect Dr. Kania's opinion that plaintiff cannot carry out "detailed instructions." [AR at 16.] Relying on this RFC and the VE's testimony based on this RFC, the ALJ concluded that plaintiff can perform his past relevant work as a hand packager. [AR at 18.]

Plaintiff argues that the ALJ's RFC determination was incomplete because it omitted Dr. Kania's opinion that plaintiff cannot carry out "detailed instructions," and further argues that the limitation in the RFC to "simple, repetitive tasks" does not encompass an inability to carry out detailed instructions. Plaintiff contends that the ALJ's failure to incorporate this limitation into plaintiff's RFC resulted in an improper conclusion that plaintiff can perform the job of hand packager, because the job of hand packager requires Reasoning Level 2 (DOT No. 920.587-018), which the Dictionary of Occupational Titles ("DOT") defines as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions," among other things (DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (1991)). [JS at 31-36.]

The Court agrees with plaintiff that Dr. Kania's opinion that plaintiff is precluded from detailed instructions appears to conflict with the ALJ's conclusion (based on the VE's testimony), that plaintiff can perform a job that requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." To the extent that the ALJ implicitly rejected Dr. Kania's opinion that plaintiff cannot carry out "detailed instructions," the ALJ provided no reason for doing so -- which is especially significant in light of his assignment of "great weight to Dr. Kania's assessment of [plaintiff's] functional limitations without substance abuse" -- and therefore he selectively relied on Dr. Kania's opinion, which was improper. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (An ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence."); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.").

On the other hand, to the extent the ALJ did *not* reject Dr. Kania's opinion that plaintiff is precluded from detailed instructions (but believed it to be encompassed by the limitation to "simple, repetitive tasks," for example), the ALJ's hypothetical question to the VE did not clearly incorporate the limitation that plaintiff cannot perform "[any]thing that require[s] detailed instructions." This is reflected in the VE's testimony that plaintiff can perform the job of hand packager, and her affirmation that her testimony was consistent with the DOT [AR at 63], which states that the job of hand packager requires the ability "to carry out detailed but uninvolved ... instructions." Since the ALJ did not give an adequate reason to reject Dr. Kania's opinion that plaintiff cannot carry out detailed instructions, the Court cannot conclude that the hypothetical question to the VE "'set out *all* [of plaintiff's] limitations and restrictions.'" Valentine, 574 F.3d at 690 (citing Embrey, 849 F.2d at 422 (emphasis in original)). Therefore, remand is warranted for the ALJ to reconsider Dr. Kania's opinion in this regard and adjust plaintiff's RFC determination if necessary. See Nguyen, 100 F.3d at 1466 n.3.

/
/
/
/
/
/
/
/
/
/
/
/
/
/
/

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly evaluate plaintiff's credibility, consider plaintiff's father's testimony, and consider Dr. Kania's opinion that plaintiff cannot perform work that requires "detailed instructions." The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: February 25, 2013

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE